IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HARDING LOVETT,
Plaintiff,

v.                                                          Case No. 17–CV–01023–JPG

JARRETT K. NEFF,
Defendant.

### **MEMORANDUM & ORDER**

This is a civil-rights case. Before the Court is Defendant Jarrett K. Neff's Motion for Summary Judgment. (ECF No. 62). Plaintiff Harding Lovett responded. (ECF No. 64). For the reasons below, the Court **GRANTS** Neff's Motion and **DIRECTS** the Clerk of Court to enter judgment.

### I.   PROCEDURAL & FACTUAL HISTORY

The Court must ultimately construe the facts in the light most favorable to Lovett, the nonmovant. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

**A. Neff's Version of Events**

Neff is an investigator in the St. Clair County Drug Tactical Unit ("Unit"). (Neff's Mot. for Summ. J. at Ex. A). In September 2015, he and other members of the Unit worked together to execute a controlled narcotics purchase, otherwise known as a *controlled buy*. (*Id.*). The target: Harding Lovett, who, according to a criminal informant, was known "to sell heroin, crack cocaine, and pills from his residence . . . ." (*Id.*). Through the informant, Neff and the Unit successfully conducted three controlled buys from Lovett. (*See id.* at Exs. A–C). Neff field-tested the evidence, yielding positive results for heroin, "acetaminophen/Hydrocodone," and crack cocaine. (*Id.*). He then documented each controlled buy in separate investigative reports. (*See id.*).

Based on his findings from the controlled buys, Neff submitted a Complaint for Search Warrant in Illinois's Twentieth Judicial Circuit Court. (*See id.* at Ex. D). A search warrant was issued that day, authorizing the Unit to search Lovett's home for narcotics and weapons, among other things. (*See id.* at Ex. E).

The next day, the Unit executed the search warrant on Lovett's residence. (*See id.* at Ex. F). Inside they found a loaded handgun in a cereal box with "one live round in the chamber" and "two in the magazine," as well as drug paraphernalia and heroin. (*Id.*). Neff's final report mentioned nothing noteworthy about Lovett's eventual arrest, simply conveying that Lovett was transported to the St. Clair County Jail. (*See id.*).

### B. Lovett's Version of Events

Lovett denies that the controlled buys ever happened: "[T]here's no recording on me, video. I didn't give away nothing. I don't know who this guy was." (Lovett Dep. at 76:10–14; *see id.* at 79–80). When asked by Neff's attorney to confirm his position, Lovett stated, "[A]ll I can say is that I didn't see it or nothing; okay?" (*Id.* at 80–81).

Lovett also denies that his arrest was uneventful. As Neff and the Unit searched his home, Lovett sat unrestrained on the couch in a t-shirt and underwear. (*Id.* at 33:15–22). Neff tossed a pair of jeans to him and instructed him to put them on. (*Id.*). As Lovett stood up to button fasten them, Neff instructed Lovett to quickly turn around. (*Id.* at 42:1–4). Then, with help from another officer, Neff "jerked [Lovett's] arm" and "shoved [him] against the wall" before placing him in handcuffs. (*Id.*).

Lovett experienced swelling and bruising on his head, face, and shoulder because of the force used during his arrest. (*Id.* at 55:9–20). The swelling went down after "[a]bout a week-and-a-half," and the bruising face after "about two weeks, two-and-a-half." (*Id.* at 72–73). He never

received medical care for his injuries, (*id.* at 73:9–11); and he does not recall having ever informed the doctor or nurse that examined him during intake at the St. Clair County Jail about what happened, (*id.* at 68:4–20).

### C. Litigation

Lovett sued Neff in this Court in September 2017. (Compl. 1, ECF No. 1). The Court then conducted a preliminary review of the Complaint to filter out nonmeritorious claims under 28 U.S.C. § 1915A. (Memorandum & Order 1, ECF No. 9). Two Fourth Amendment claims survived. (*See id.* at 12). The first alleges that "Neff obtained a search warrant based on false information about [Lovett's] alleged illegal activity, then searched [Lovett's] home and arrested him using that warrant which lacked probable cause." (*Id.* at 5, 9). The second alleges that "Neff and/or other sheriff's officer(s) used excessive force against [Lovett] during his arrest, by throwing him against a wall." (*Id.*). Nearly two years later, Neff moved for summary judgment.

## II.   LEGAL STANDARD

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accepts its version of events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That said, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[T]he judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587 (1986). In

other words, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant is thus entitled to summary judgment when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. But "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

A motion for summary judgment can be supported by "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Sworn testimony," however, "is not the only basis on which summary judgment may be granted; rather, the court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits." *Woods v. City of Chi.*, 234 F.3d 979, 988 (7th Cir. 2000) (internal citations and quotation marks omitted). Still, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

### III.   LAW & ANALYSIS

Title 42, Section 1983 of the U.S. Code creates a private right of action for individuals deprived "of any rights, privileges, or immunities secured by the Constitution and laws" by a state actor. Section 1983, however, " 'is not itself a source of substantive rights,' instead simply providing 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus "[t]he first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker*, 443 U.S. at 140.

Lovett's two § 1983 claims allege that Neff deprived him of the rights secured by the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent a warrant based "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

#### A.  Neff's Investigative Reports

Rather than addressing the merits of his claims or rebutting Neff's defenses, Lovett devotes most of his brief to attacking the admissibility of Neff's three investigative reports. Neff relies on those reports to challenge Lovett's assertion that the controlled buys never happened. According to Lovett, however, they "are hearsay and should be barred from consideration" because of "the statements of the third-party 'confidential source' contained within" them. (Lovett's Mem. in Opp. to Neff's Mot. for Summ. J. 4, ECF No. 64). The Court disagrees.

True, the investigative reports are hearsay (i.e., Neff's observations and involvement in Lovett's eventual arrest). *See* Fed. R. Evid. 801. But not all hearsay is prohibited. In civil cases, the *public-records exception* excludes public records setting out "a matter observed by law

enforcement" when "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8); *see Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (stating that in civil trials "[i]t is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted"). And Lovett fails to justify his assertion that the investigative reports are in any way untrustworthy.

Moreover, although "third-party statements contained in a police report do not become admissible *for their truth* by virtue of their presence in a public record," *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) (emphasis added), the informant's statements in Neff's investigative reports are "not hearsay because they [are] not offered to prove that they [are] true," but to show that Neff "had information giving [him] probable cause" to conduct the investigation and later secure the warrant-complaint, *see Cairel v. Alderen*, 821 F.3d 823, 830–31 (7th Cir. 2016). The investigative reports therefore fall within the *public-records exception*, and the Court will consider them.

### B. Lovett's Unreasonable-Search Claim

"The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). That the warrant must rest on probable cause does not necessarily mean, however, "that there will be a *truthful* [factual] showing, . . . for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's knowledge that sometimes must be garnered hastily." *Id.* at 164–65 (emphasis in original). Even so, "[i]t is established law that a warrant affidavit must set forth particular facts and circumstances underlying

the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Id.* at 165. It follows that "[a] warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003). "[A] 'reckless disregard for the truth' can be shown by demonstrating that the officer 'entertained serious doubts as to the truth' of the statements, had 'obvious reasons to doubt' their accuracy,' or failed to disclose facts that he or she 'knew would negate probable cause.' " *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012).

Lovett's first Fourth Amendment claim alleges that Neff lied in the complaint used to secure the search warrant in two ways. *First*, he disputes that the three controlled buys ever happened: "[T]here's not recording on me, video. I didn't give away nothing. I don't know who this guy was." (Lovett Dep. at 76:10–14; *see id.* at 79–80). When asked by Neff's attorney to confirm his position, Lovett stated, "[A]ll I can say is that I didn't see it or nothing; okay?" (*Id.* at 80–81). *Second*, he alleges that the some of the "drugs" that Neff obtained from the purported controlled buys were not drugs at all—although Neff claims to have field-tested the substances and received positive results, Lovett contends that later tests conducted by the State of Illinois revealed that at least some of the substances were not narcotics. Based on these supposed fabrications, Lovett maintains that the search warrant was obtained without probable cause in violation of the Fourth Amendment. The Court disagrees.

Lovett's barebones assertion that Neff concocted an elaborate, trumped-up story about three controlled buys lacks support in the record. Rather than addressing the merits of Neff's Motion for Summary Judgment, Lovett dedicated much of his brief to challenging

"unauthenticated" exhibits. That blunder, of course, represents a fundamental misunderstanding of his burden on summary judgment. *See Celotex Corp.*, 477 U.S. at 323 ("The moving party is 'entitled to a judgment as a matter of law' because the *nonmoving* party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.") (emphasis added). Lovett's failure to present any evidence to support his claim discharged Neff's burden as the moving party. *See id.* at 325. For "[i]f the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id.* at 331 (Brennan, J., dissenting); *see also* Wright et al., 10A *Federal Practice and Procedure* § 2727.2 (4th ed. 2020) ("As is clear by Rule 56(c)'s express requirement that the nonmoving party must support its factual positions, the nonmovant cannot satisfy that burden by relying on mere allegations in the pleadings to show that there is a triable issue.").

Ultimately, Lovett's failure to present any evidence after nearly three years of litigation dooms his claims. *E.g.*, *Heck v. Rogers*, 457 F.2d 303, 307 (7th Cir. 1972) ("There is no foundation in this record which would support the existence of the alternative factual issues which plaintiffs . . . seek to characterize as a genuine issue of material fact for trial."); *United States v. Mt. Vernon Mill. Co.*, 345 F.2d 404, 407 (1965) ("Intangible speculation does not raise an issue of material fact."). Worse, the investigative reports are compelling evidence that the controlled buys happened, making both of Lovett's unsupported claims merely colorable. Moreover, even if some of the field-tested evidence eventually tested negative, the drugs were but one of several factors making Neff's belief that he had probable cause reasonable. Without evidence to the contrary, a trial would be useless. Neff is therefore entitled to judgment as a matter of law.

### C. Lovett's Excessive-Force Claim

"A claim that a police officer has used excessive force in the course of an arrest, investigatory stop, or other 'seizure' of a citizen is addressed to the reasonableness of the seizure, under the standards established by the Fourth Amendment." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). "Determining whether the force used to effect a particular seizure is 'reasonable' . . . requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The question is thus "whether the totality of the circumstances justifie[s]" the seizure, *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985), with "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396.

The Supreme Court "has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* In other words, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). This reflects the fact that "police officers are often forced to make split-second judgment—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Lovett argues that Neff used excessive force by shoving him against the wall during his arrest, causing bruising and swelling to his shoulder and face. Because Neff denies having done so, Lovett contends that there is a genuine dispute of material fact precluding summary judgment.

Lovett also asserts that summary judgment is inappropriate because the litigants dispute the extent of Lovett's injuries—Lovett contends that he suffered from bruising and swelling, and Neff denies that any injuries existed. The Court disagrees.

Neff is entitled to judgment as a matter of law because the force used was objectively reasonable. Lovett was being investigated for a serious drug offense, and Neff personal oversaw a team that executed three successful controlled buys. During the search, Neff and the Unit then located a handgun concealed in a cereal box. Although Lovett was unarmed and compliant, Neff was justified in the force used to secure Lovett's arrest—which occurred in a split-second—considering the severity of the offense and the identification of a hidden weapon. Lovett also testified that the extent of his supposed injuries was bruising and swelling that took about two weeks to heal and did not require medical attention. He never requested medical care; nor could he recall having ever notified the doctor or nurse that examined him at intake. (In fact, Lovett presents no evidence at all.) Even so, "[t]he outcome of the official conduct is not dispositive. If the means employed by the officers were appropriate under the circumstances, no constitutional deprivation occurred . . . ." Joseph G Cook & John L. Sobieski Jr., 3 *Civil Rights Actions* ¶ 10.03 (Matthew Bender & Co. 2020). Put differently, the factual disputes are immaterial—even construing the facts in the light most favorable to Lovett, Neff did not violate the Fourth Amendment.

Lovett also failed to put forth any evidence to support his excessive-force claim, instead relying only on the pleadings. But "[a] scintilla of evidence in support of the nonmovant's position is insufficient to successfully oppose summary judgment; 'there must be evidence on which the jury could reasonably find for the plaintiff.' " *Brownell v. Figel*, 950 F.3d 1285, 1289 (7th Cir. 1991) (quoting *Anderson*, 477 U.S. at 251–52). Summary judgment is therefore appropriate.

### D. Neff's Qualified-Immunity Defense

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.' " *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[A] defendant who loses on the Fourth Amendment . . . merits is still entitled to have the trial court decide the qualified immunity question." Sheldon H. Nahmod, 2 *Civil Rights & Civil Liberties Litigation: The Law of Section 1983* § 8:63 (4th ed. 2019).

Qualified immunity presents two inquiries: (1) whether "the facts alleged show the officer's conduct violated a constitutional right"; and (2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S 194, 201 (2001). District judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"Although qualified immunity is an affirmative defense, once the defense is raised, it becomes the plaintiff's burden to defeat it." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008); *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988) ("It is the plaintiff who bears the burden of establishing the existence of the allegedly clearly established constitutional right.").

Lovett neglected Neff's argument that he is entitled to qualified immunity—and he is. His failure to meet the burden of defeating the qualified-immunity defense is another reason warranting summary judgment.

*Lovett's Unreasonable-Search Claim*. Government officials are generally entitled to qualified immunity for their conduct in applying for a search warrant. *See Junkert v. Massey*, 710 F.3d 364, 369 (7th Cir. 2010). "[A]n officer who relies on a subsequently invalidated warrant may be liable for § 1983 damages *only* if the warrant application was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)) (emphasis added). Put differently, "[a]n officer who knowingly or recklessly submitted an affidavit containing false statements may still get qualified immunity if he can establish that he had an objectively reasonable basis for believing the facts in the affidavit were sufficient to establish probable cause." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012).

As discussed, Neff had an objectively reasonable basis for believing the facts in the complaint used to secure the search warrant. The complaint mostly turned on Neff's three investigative reports, which are not *genuinely* disputed. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000) ("A genuine issue of fact 'exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.' ") (quoting *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999)). Lovett presents no evidence to support his claim that some of the controlled buys yielded false positives, or his claim that the controlled buys never happened. He bears the burden, yet he took no initiative to investigate his claims in good faith.

Moreover, even if some of the "drugs" later turned out to be a false positive, their legitimacy is but one of many factors that gave Neff an objectively reasonable basis to believe that probable cause existed. This includes the controlled buys themselves. The informant's purported statements had the effect of leading Neff to believe that Lovett was distributing narcotics. *See* Fed. R. Evid. 801 advisory committee's note ("If the significance of an offered statement lies solely in

the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

Finally, the investigative reports were submitted under oath to a judge, and Lovett again presents no evidence to bolster his bald assertion that they were contrived. Those reports memorialized the planning and execution of the State's investigation on Lovett. Without any evidence suggesting that those reports are untrustworthy, the Court finds that Neff had an objectively reasonable basis to believe that probable cause existed.

*Lovett's Excessive-Force Claim*. "Police officers who use force in making an arrest are entitled to qualified immunity from suits for damages under 42 U.S.C. § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993) (quoting *Harlow*, 457 U.S. at 818). Yet "[t]he power to arrest necessarily carries with it the power to use force to make an arrest." *Lester v. City of Chi.*, 830 F.2d 706, 712 (7th Cir. 1987). So "even if the plaintiffs demonstrate that excessive force was used, they must further establish that it was objectively unreasonable for the officer to believe that the force was lawful . . . ." *Abbot v. Sangamon Cty.*, 705 F.3d 706, 725 (7th Cir. 2013).[1]

As discussed, Lovett "bears the burden to prove that the police officers used excessive force, but he fails to set forth any evidence that the force used was excessive." *Rice*, 999 F.2d at 1175. It was also not objectively unreasonable for Neff to believe that the force used was lawful. Even construing the facts in Lovett's favor, unarmed in nothing but underwear and a t-shirt, the

---

[1] *But see Ford v. Retter*, 840 F. Supp. 489, 491–93 (N.D. Ohio 1993) ("[T]he distinction between the defense of qualified immunity and the substantive law of an excessive force claim have become blurred" because "the determination of qualified immunity turns on the same objective reasonable ness standard that the claim of excessive force turns on.") (internal citations and quotation marks omitted).

force used was proportional to the threat Lovett posed, especially considering the handgun concealed in a cereal box and the seriousness of the crimes alleged. In short, it was not objectively unreasonable for Neff to believe that the amount of force he used was lawful. Neff is therefore entitled to qualified immunity and judgment as a matter of law.

## IV.    CONCLUSION

The Court **GRANTS** Defendant Jarrett K. Neff's Motion for Summary Judgment and **DIRECTS** the Clerk of Court to enter judgment.

**IT IS SO ORDERED.**

**Dated: Tuesday, September 22, 2020**

<u>**S/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**